UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DYNAMIC WORLDWIDE LOGISTICS,
INC.,

                    Plaintiff,

        – against –

EXCLUSIVE EXPRESSIONS, LLC,
DAVID SAAD and JOSEPH SAAD,

                 Defendants.

**OPINION AND ORDER**

14 Civ. 1370 (ER)

RAMOS, D.J.:

      Dynamic Worldwide Logistics, Inc. ("Dynamic" or "Plaintiff) brings suit against

Exclusive Expressions, LLC ("Exclusive"), David Saad, and Joseph Saad (together with

Dynamic, "Defendants") for conversion and breach of contract.  *See* Compl., Doc. 2.  The parties

entered into a contract in which Dynamic promised to arrange for the transportation of leather

goods from China to the United States.  *Id*. at ¶ 7.  The present dispute centers on Defendants'

failure to tender the corresponding bills of lading following delivery of the items to Defendants

in New York City.  *Id*. at ¶¶ 18, 23.  Defendants moved to dismiss the Complaint pursuant to

Rule 12(c) of the Federal Rules of Civil Procedure.  *See* Defs.' Mem. L. Support Mot. Dismiss,

Doc. 19.  For the reasons set forth below, Defendants' motion is GRANTED.

## I.   **Background**[1]

      Dynamic is a New Jersey-based non-vessel-operating common carrier ("NVOCC") that

provides transportation services between Asia and the United States.  Compl. at ¶ 1.  Exclusive, a

---

[1] For the purposes of the instant motion, the Court assumes the allegations in Plaintiff's Complaint to be true and
relies on information contained therein except where otherwise specifically noted.  *See Walker v. Schult*, 717 F.3d
119, 124 (2d Cir. 2013).

New York Limited Liability Company, imports goods from China. *Id*. at ¶ 2. David and Joseph Saad are alleged to be either members or managers of Exclusive who currently reside in New York. *Id*. at ¶ 3-4.

Dynamic claims that it contracted with Exclusive to arrange for the transportation of handbags, wallets, and evening bags from China to New York City. *Id*. at ¶¶ 7, 8-9. In 2012—the only date specified in the entire Complaint—Dynamic allegedly issued a total of eight negotiable bills of lading, which designated Exclusive as the consignee.[2] *Id*. at ¶¶ 8-9. One set of shipments originated from the Chinese city of Yantian; the second set came from Shanghai. *Id*. Beyond that, the Complaint is devoid of facts ordinarily relevant to disputes involving the maritime transportation of goods. For example, the Complaint does not cite a single term contained in the bills nor identifies the parties bound thereto. Moreover, it does not identify the shipper or consignor, or name the notify party.[3]

Without establishing the source of Exclusive's obligation or reciting any contractual provisions, Plaintiff claims that Exclusive was required to provide Dynamic with the original bills of lading in order to receive delivery of the shipments. *Id*. at ¶ 10. Despite this alleged requirement, however, a Dynamic employee, who was not identified in the Complaint, authorized the delivery of the shipments to Exclusive without collecting the bills of lading.

---

[2] Defendants claim that the bills of lading were non-negotiable, which Plaintiff disputes. Doc. 23 at 4. However, Plaintiff did not attach a copy of the bills to the Complaint and Defendants did not seek to introduce them as an exhibit.

[3] A "notify party" is "the party to be notified when the goods arrive at their destination." *Dorlan Mgmt. Co. v. M/V MSC DANIELA*, No. 96 Civ. 6747 (JSM), 1997 WL 411930, at *1 n.1 (S.D.N.Y. July 22, 1997) *judgment vacated on reconsideration sub nom. Dorland Mgmt. Inc. v. M/V MSC DANIELA*, No. 96 Civ. 6747 (JSM), 1997 WL 626399 (S.D.N.Y. Oct. 9, 1997). The mere fact that a party "was listed in the bill of lading as the party to be notified raises no presumption that he was the intended consignee." *Columbia Trading Corp. v. Moore-McCormack Lines, Inc*., 374 F.2d 864, 865 (2d Cir. 1967).

*Id*. at 11.  The employee did so relying on a purported promise from an employee at Exclusive, who was also not identified in the Complaint, that it would surrender the bills of lading to Dynamic at some future point in time.  *Id*.  The Complaint fails to indicate when the promise was made and where the goods were at that point in time.  Plaintiff states that it has repeatedly demanded the original bills of lading from Exclusive to no avail.  *Id*. at ¶ 12.  Yet, the number, dates, and method of these requests are not specified in the Complaint, nor are the individuals by whom and to whom the requests were made.  Consequently, Plaintiff argues that Exclusive wrongfully converted the goods and breached an unspecified contract with Dynamic, all under the "direction and guidance" of David and Joseph Saad.  *Id*. at ¶¶ 16-23.

Nowhere in the Complaint does Plaintiff allege that it owned, possessed or controlled the goods delivered to Defendants.  Although it fails to describe any specific harm it has suffered, Dynamic seeks damages in excess of $374,154 for the conversion of property and breach of contract, along with costs and attorney fees.  *Id*. at ¶ 23.

## II.   Discussion

### A.  12(c) Motion to Dismiss Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is

not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## B.  Conversion

### i.  Federal Admiralty Jurisdiction

Whether a tort falls within the admiralty jurisdiction of the federal courts traditionally depends on the locality of the wrong. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 253 (1972). "If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not."[4] *Id.* Specifically, the federal maritime tort of conversion requires a party to plead that a defendant "appropriated the property

---

[4] The wrong must additionally fulfill the "nexus test," which requires that "it bear a significant relationship to traditional maritime activity[.]" *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Executive Jet*, 409 U.S. at 261, 268).

in question for its own use or gain and that the wrongful act occurred on navigable waters." *Gowanus Indus. Park v. Arthur H. Sulzer Associates*, No. 06 Civ. 105 (KAM) (JO), 2014 WL 4370643, at *5 (E.D.N.Y. July 22, 2014) *report and recommendation adopted sub nom.* *Gowanus Indus. Park, Inc. v. Arthur H. Sulzer Associates, Inc.*, No. 06 Civ. 105 (KAM) (JO), 2014 WL 4370722 (E.D.N.Y. Sept. 2, 2014) (internal citation omitted).  In its opposition papers, Plaintiff declares that "federal maritime law clearly governs the shipments at issue" in its conversion claim.  Pl.'s Mem. L. Opp. Mot. Dismiss, Doc. 20 at 6.

Based on the bare-bones allegations in the Complaint, admiralty jurisdiction is anything but clear.  Plaintiff claims that Exclusive converted the goods by taking possession of them without surrendering the bills of lading.  Compl. at ¶ 13.  As the designated consignee, Exclusive presumably could have only accepted delivery of the goods after the shipments arrived in New York.  *See id.* at ¶¶ 2, 8-9.  Since a Dynamic employee concededly authorized the delivery to Exclusive, the initial possession was lawful and the alleged conversion must have occurred later. *See id.* at ¶ 11.  Nothing in the Complaint suggests that the alleged tortious conduct occurred on navigable waters.  Therefore, the Court may not exercise admiralty jurisdiction over Plaintiff's conversion claim.  *See Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir. 1971) (no admiralty jurisdiction for tort claims where purported negligence took place on land).

### ii.   Diversity Jurisdiction

Given that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), it must also assess Plaintiff's conversion claim under the applicable state law.[5]  Conversion is defined under New

---

[5] Under 28 U.S.C. § 1332(a), diversity jurisdiction exists where the amount in controversy is greater than $75,000 and the parties are "citizens of different States."  Specifically, each defendant must be a citizen of a different State

York law as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."[6] *Thypin Steel Co. v. Certain Bills of Lading Issued for Cargo of 3017 Metric Tons, More or Less, of Hot Rolled Steel Plate Laden on Bd. M/V Geroi Panfilovsky*, No. 96 Civ. 2166 (RPP), 1998 WL 912100, at *5 (S.D.N.Y. Dec. 30, 1998) *aff'd in part, dismissed in part sub nom. Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273 (2d Cir. 2000) (citing *G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 912 (S.D.N.Y. 1994)). To state a claim for conversion, a plaintiff must demonstrate that it has "legal ownership or an immediate possessory right superior to that of defendants'" and that "the defendants exercised unauthorized dominion over the property to the exclusion" of the plaintiff's rights.  *Sea-Land Serv., Inc. v. Remington Rand Corp.*, No. 84 Civ. 177 (LBS), 1986 WL 8862, at *5 (S.D.N.Y. Aug. 7, 1986) *aff'd sub nom. Sealand Serv. Inc. v. Remington Rand Corp.*, 812 F.2d 713 (2d Cir. 1987) (citing *Gold Medal Products, Inc. v. Interstate Computer Servs., Inc.*, 80 A.D.2d 601, 600, 436 N.Y.S.2d 312, 313 (App. Div. 1981)).

Both parties have dedicated significant effort to debating whether Plaintiff has standing to bring a suit against Defendants given its status as an NVOCC.[7]  Defendants contend that Plaintiff

---

from each plaintiff.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  Plaintiff claims to be a New Jersey corporation, while alleging Defendants are all citizens of New York.  *See* Compl. at ¶¶ 1-4.  The amount in controversy is in excess of $374,154.  *See id.* at ¶ 23.  Defendants do not contest the Court's diversity jurisdiction in their papers.

[6] The Court finds that New York substantive law governs Plaintiff's conversion claim because the place of injury appears to be New York—the state to which the items were delivered and where all Defendants allegedly reside. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941) (federal court sitting in diversity applies choice of law rules of forum state for choice of substantive law analysis); *Schultz v. Boy Scouts of Am. Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 682-83 (1985) (under New York choice of law doctrine, place of injury determines applicable law for torts cases).

[7] The Second Circuit has provided an informative description of the role an NVOCC plays, explaining that it "is a middleman that does not own and operate its own vessels."  *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 141 (2d Cir. 2010).  Specifically, "it enters into service contracts whereby it purchases large

has failed to allege that it had any right to ownership, possession, or control of the property it claims was converted.  Doc. 19 at 6-7.  Indeed, the Complaint fails to explicitly assert any possessory right to the cargo.  Plaintiff counters that, as an NVOCC, it was inherently acting as both an agent for the shipper and a bailee and therefore has standing to sue on the shipper's behalf.  Doc. 20 at 4.  Plaintiff notes that there is a presumption that an NVOCC acts as an agent of the shipper when it arranges transportation with a carrier.  Doc. 20 at 4 (citing *Delphi-Delco Electronics Sys. v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 419 (S.D.N.Y. 2004)).  However, that presumption—which is rebuttable—arises under maritime law.  *Delphi-Delco Electronics*, 324 F. Supp. 2d at 419.  Furthermore, the Supreme Court has indicated that an intermediary with which a shipper contracts for the transportation of cargo "is certainly not automatically empowered to be the cargo owner's agent in every sense."  *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33 (2004).  The Supreme Court has only applied the "limited agency rule" to determine that an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers.  *Id*. at 34 ("[H]ere we hold that intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream.").

Plaintiff claims that courts within this circuit have determined that, when an NVOCC delivers cargo without obtaining the corresponding bills of lading, it assumes the status of a bailee.  Doc. 20 at 4.  However, the cases that Plaintiff cites only deal with a vessel-operating common carrier's liability as a bailee for misdelivery.  *See e.g. Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 483 (2d Cir. 1985) (ocean carrier liable to shipper for misdelivery of goods); *David Crystal, Inc. v. Cunard S. S. Co*., 339 F.2d

---

blocks of cargo space at a discount from vessel-operating common carriers (VOCCs). It then contracts with shippers to ship smaller amounts of cargo in that space." *Id*.

295, 298 (2d Cir. 1964) (same); *Tokio Marine Mgmt., Inc. v. M/V Zim Tokyo*, No. 91 Civ. 63

(PKL), 1993 WL 322869, at *5 (S.D.N.Y. Aug. 17, 1993) (marine cargo underwriter established

a *prima facie* case of negligence against common carrier that assumed bailee status; NVOCC's

liability assessed under the express terms of the bills of lading).  It does not appear that any court

of binding jurisdiction has determined whether an NVOCC is in a bailment relationship that

would allow it to assert a claim on the shipper's behalf.  More specifically, Plaintiff has not

proffered, nor has the Court found, any authority for the proposition that an NVOCC can assert a

claim in its own name—as Plaintiff does here—on behalf of a shipper/bailor.  Assuming

Dynamic qualifies as a bailee, it would hold any recovery as a trustee for the bailor.  *See Rogers*

*v. Atl., G. & P. Co*., 213 N.Y. 246, 259, 107 N.E. 661 (1915).

Ultimately, the Court need not decide Plaintiff's status because the Complaint fails to

adequately allege the elements of conversion under New York law.  First, regardless of

Plaintiff's status as an NVOCC, the Complaint does not establish that it had a superior right of

possession over Exclusive, the consignee.  Plaintiff proclaims that Exclusive lacked an

ownership interest in the goods, but the Complaint fails to specifically allege facts that support

its conclusory assertion or rule out the possibility that Exclusive maintained a *superior*

possessory interest.  *See* Compl. at ¶ 17.  Second, when possession of the property by a

defendant was initially lawful, an action for conversion only arises if plaintiff made demands for

return of the property or a defendant wrongfully transferred or dispossessed of it before a

demand was made.  *Regions Bank v. Wieder & Mastroianni, P.C*., 526 F. Supp. 2d 411, 414

(S.D.N.Y. 2007) *aff'd*, 268 F. App'x 17 (2d Cir. 2008) (citing *MacDonnell v. Buffalo Loan, Trust*

*& Safe Deposit Co*., 193 N.Y. 92, 101, 85 N.E. 801, 803 (1908)).  Therefore, although wrongful

intent is generally not an element of conversion, "a defendant who came into possession lawfully

will be liable for transferring the property only if the transfer was in some way wrongful." *Id.* In the conversion context, courts have deemed a transfer to be "wrongful" when the "transferor knew [it] would violate the superior property rights of another, yet disposed of the property anyway, usually for personal gain." *Id.* at 415.

According to the Complaint, a Dynamic employee authorized the transfer of cargo to Exclusive, in exchange for a promise that it would surrender the bills of lading.  Compl. at ¶ 11. The Complaint states that Plaintiff made repeated demands for the bills of lading.  *Id.* at ¶ 12. However, the conversion claim pertains to the cargo, not the bills of lading.  Although Plaintiff also contends that Exclusive disposed of the goods, it does not allege that Exclusive knew that it was violating Plaintiff's rights when it did so.  Therefore, the Complaint fails to adequately plead a claim for conversion.

Plaintiff points to a First Circuit case in which a carrier, as a bailee, "retained reclamation rights . . . under a common law claim for conversion."[8]  *See* Doc. 20 at 5 (citing *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 98 (1st Cir. 1993) (hereinafter *Evergreen II*)).  In *Evergreen*, an ocean carrier released a shipment of scallops to the designated notify party without collecting the corresponding negotiable bills of lading.  *Id.* at 92. Thereafter, the notify party became insolvent and two banks that were holders of its security interests seized the scallops.  *Id.* at 93.  A third party informed the appellant that it held the

---

[8] The court appeared to be drawing from terminology present in the Uniform Commercial Code, which states, "[w]here the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt[.]"  U.C.C. § 2-702(2).

original bills of lading for the scallops.[9]  *Id.*  Facing liability to the third party, the carrier then sued the banks and the notify party, seeking recovery of the scallops or tort damages for their value.  *Id.*  The district court granted the banks' summary judgment motion.  *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F. Supp. 291, 299 (D. Mass. 1992) *vacated*, 4 F.3d 90 (1st Cir. 1993) (hereinafter *Evergreen I*).  It held that, although the carrier adequately plead a claim for conversion, the banks had a superior perfected security interest.  *Evergreen II*, 4 F.3d at 93; *see also Evergreen I*, 806 F. Supp. at 296-297.  Applying Massachusetts law and the Uniform Commercial Code, the First Circuit vacated the district court's decision, determining that the carrier was a "special type of bailee."  *Evergreen II*, 4 F.3d at 96 (internal quotation marks and citations omitted).  The court defined the interaction between the carrier and the notify party as a "temporary entrustment" of possession by a bailee, as opposed to a purchase or sale of any sort.  *Id.* at 96-98.  This determination derived from the general principle that an "ocean carrier possesses no title or other ownership interest in goods carried under a negotiable bill of lading" and was primarily supported by bankruptcy decisions not involving maritime transactions.  *Id.* at 96, 98 (internal citations omitted).  Since Massachusetts law dictates that a debtor must have rights in the collateral in order for a security interest to attach, neither the notify party nor the banks had any rights in the scallops because no sale had taken place between the carrier and the notify party.  *Id.*  at 98 (citing Mass. Gen. Laws ch. 106, § 9-203(b)(2)).  The carrier therefore retained a possessory claim sounding in conversion sufficient to overcome summary judgment.  *Id.*

---

[9] The *Evergreen II* court never expressly clarified whom the bill of lading named as the consignee.  It did however note that, "[b]ecause an order bill is negotiable . . . the consignee or 'notify party' designated on the bill of lading is not necessarily the holder of the bill at the time and place of delivery."  4 F.3d at 92 n.1.

Although several of the facts in *Evergreen* parallel the instant case, ultimately it is distinguishable.  First, the court was not assessing the sufficiency of the pleadings.  Indeed, the district court determined that they were adequate.  Second, the carrier in *Evergreen* received letters of indemnity in lieu of the bills of lading themselves.  *Id*. at 92.  These letters not only contained a promise to produce the bills of lading; they also contained agreements to indemnify the carrier against third party claims and included false representations of title.[10]  Third, circumstantial evidence established that the carrier was fraudulently induced into discharging the cargo.  *Id*.  Plaintiff does not make any such allegations in the present case.[11]  Nor does the Complaint suggest that any security interests are involved.  Finally, in *Evergreen*, the bills of lading were held by a third party, while in this case Plaintiff never mentions the existence of a middleman or otherwise questions Defendants' ability to surrender the bills of lading.

A more appropriate source of guidance is provided by a court within this district, which directly ruled on the viability of a carrier's conversion claims, albeit at the summary judgment phase.  In *Sea-Land Service*, the carrier brought a conversion claim against both the notify party and consignee.  *Sea-Land Serv., Inc. v. Remington Rand Corp*., No. 84 Civ. 177 (LBS), 1986 WL 8862, at *1 (S.D.N.Y. Aug. 7, 1986) *aff'd sub nom. Sealand Serv. Inc. v. Remington Rand Corp.*, 812 F.2d 713 (2d Cir. 1987).  The carrier had delivered cargo to the notify party without

---

[10] When the scallops arrived at port, the notify party "represented that it held title to the scallops but that the bills of lading were still in transit."  *Evergreen II*, 4 F.3d at 92.  The letters of guaranty incorporated these allegations of title.  *Id.*  Citing circumstantial evidence, the circuit court inferred that the notify party's "representations of title were false and fraudulent at the time made."  *Id*.

[11] There is a suggestion in Plaintiff's response that Exclusive fraudulently induced it to tender the cargo by "implicitly representing it had paid for the goods when it had not."  Doc. 20 at 3-4.  If Plaintiff seeks to rely on a theory of fraud, the Complaint is all the more deficient.  Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud[.]"

collecting the bills of lading.  *Id.*  The notify party later declared bankruptcy and the shipper sued the carrier for improper delivery and breach of contract in a separate proceeding.  *Id.*  Applying New York law, the court dismissed the carrier's conversion claim, noting that it failed to allege that it had a possessory interest in the cargo that was superior to that of the notify party. *Id.* at *5.  Much like the present case, the carrier did not provide a reason for why it, rather than one of the defendants, was entitled to possess the goods.  *Id.*  It additionally failed to assert that it demanded return of the goods.  *Id.*  The court therefore granted summary judgment in the defendants' favor.  *Id.*

Plaintiff's claim is dismissed due to its failure to adequately plead the required elements of conversion.[12]

## C.  Breach of Contract

As a preliminary matter, it is entirely unclear whether Plaintiff's breach of contract claim is premised on a breach of the obligations in the bills of lading, or an alleged oral promise to tender the bills after the goods were delivered.  The Court has therefore analyzed the claim under both theories and finds both wanting.

---

[12] As discussed below, Plaintiff also reformulated its conversion claim into a nearly identical one for breach of contract.  "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in . . . conversion, and other torts . . . are generally precluded, unless based on a duty independent of the contract."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011).  For the reasons stated below, Plaintiff has failed to establish the existence of a valid contractual obligation.  Therefore, the nearly identical breach of contract claim does not provide grounds for dismissing the conversion claim.  However, it is indicative of the lack of care with which the Complaint was drafted.

####    i.    Breach of the Bills of Lading

"A bill of lading for ocean carriage is a maritime contract." *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 277 (2d Cir. 2000) (citing *Leather's Best*, 451 F.2d at 807).  "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Kirby*, 543 U.S. at 22-23 (citing *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961)).  "Under federal common law, 'contracts for carriage of goods by sea must be construed like any other contracts:  by their terms and consistent with the intent of the parties.'" *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) (quoting *Kirby*, 543 U.S. at 31).  Although it is unclear whether Plaintiff's claim arises under the bills of lading or a separate oral promise to tender the bills, it plainly relates to entitlement to the bills themselves.  Therefore the Court may exercise its admiralty jurisdiction over the dispute.  *See Thypin Steel*, 215 F.3d at 278-279 ("[A] dispute over title to or possession of a bill of lading . . . clearly implicates the fundamental federal interest in the protection of maritime commerce.").

Defendants contend that the bills of lading at issue are non-negotiable and therefore it was not necessary to surrender them at the time of delivery.[13]  *See* Defs.' Reply Supp. Mot. Dismiss, Doc. 23 at 7.  Here, the Complaint states that the bills of lading were negotiable and the Court must take that to be true.[14]  Compl. at ¶¶ 8-9.  However, that fact is not determinative; case

---

[13] A negotiable bill of lading is a document of title, while a non-negotiable bill functions more like a receipt. *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 (MHD), 2012 WL 4767180, at *6 (S.D.N.Y. Sept. 28, 2012) (internal quotation marks and citation omitted).  If a bill of lading is negotiable, a carrier may only deliver goods when presented with the original bill. *Id.* (citing *Dorlan Mgmt. Co. v. M/V MSC DANIELA*, No. 96 Civ. 6747 (JSM), 1997 WL 411930, at *4 (S.D.N.Y. July 22, 1997) *judgment vacated on reconsideration sub nom. Dorland Mgmt. Inc. v. M/V MSC DANIELA*, No. 96 Civ. 6747 (JSM), 1997 WL 626399 (S.D.N.Y. Oct. 9, 1997)).  Production of the original bill is not a pre-condition to delivery where a non-negotiable bill of lading is involved. *Id.*

[14] In its reply, Plaintiff insists that the bills of lading were necessarily negotiable under the Federal Bills of Lading Act, which provides that a bill is negotiable unless stated otherwise on its face.  Doc. 20 at 4 n.1 (citing 49 U.S.C.

law suggests that the obligation is on the *carrier* to collect negotiable bills of lading.  *See e.g. Allied Chem.*, 775 F.2d at 481 ("[T]he carrier, the issuer of the bill of lading, is responsible for releasing the cargo only to the party who presents the original bill of lading."); *Impact, Inc. v. Int'l Freight Exp., Inc*., No. 96 Civ. 5204 (DLC), 1997 WL 570580, at *2 (S.D.N.Y. Sept. 12, 1997) ("[A] carrier may release goods only to the party producing the original bill of lading."). Nothing in the facts or case law presented to the Court suggests that the *consignee* is inherently contractually obligated to produce them.

Nonetheless, in its opposition papers, Plaintiff argues that, as a consignee, Exclusive was automatically bound by the terms of the bills of lading to present the original bills in return for the release of the cargo.[15]  *See* Doc. 20 at 8 n.3.   That is not necessarily so.  "[A] party is not bound to the terms of a bill of lading unless the party consents to be bound."  *In re M/V Rickmers Genoa Litig*., 622 F. Supp. 2d 56, 71 (S.D.N.Y.) *opinion adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009*) and  aff'd sub nom. Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012) (citing *Stein Hall & Co. v. S. S. Concordia Viking*, 494 F.2d 287, 291 (2d Cir. 1974)).  Although intended third-party beneficiaries may enforce contract terms in their favor, the mere fact that a party is a beneficiary does not create contractual obligations for that beneficiary.  *Id.* at 72 (citing *Stein Hall*, 494 F.2d at 291).  Contractual obligations cannot be

---

§ 80103(a)(1)(B).  Defendants correctly point out that the relevant portion of the Act is inapplicable.  Doc. 23 at 7-8 (citing 49 U.S.C § 80102).  Regardless, since the Complaint asserts that the bills were negotiable and neither party has produced the bills themselves, the Court must accept the fact as true.

[15] The cases that Plaintiff cites in support of this position are inapposite.  In *Ataei v. M/V Barber Tonsberg*, the bill of lading expressly provided that it applied to the "Shipper, Consignee, Owner of the goods and the owner and/or demise Charterer of any carrying vessel."  639 F. Supp. 993, 1003 (S.D.N.Y. 1986).  In the present case, Plaintiff fails to cite any terms contained in the bills of lading identifying Exclusive as a party thereto.  The second case cited by Plaintiff is a New York State court case determining a carrier's tort liability.  *See Lewis v. New York*, O. & W. Ry. Co., 210 N.Y. 429, 433, 104 N.E. 944 (1914).

imposed on an intended beneficiary absent a showing that the third party manifested acceptance to be bound or the existence of an agency relationship with one of the contracting parties. *Id.* (internal citations omitted). Plaintiff's skeletal complaint fails to assert any of the factors necessary to allow the Court to infer that Exclusive was a party to the bills of lading. It simply states that Exclusive was a consignee on the eight bills of lading that Plaintiff issued. Compl. at ¶¶ 8-9. The mere fact that a party is a consignee or third-party beneficiary is insufficient to warrant a finding that Exclusive was bound by the terms contained in the bills of lading. *See Rickmers*, 622 F. Supp. 2d at 73 (dismissing contract claims asserted under negotiable bills of lading against an ultimate consignee); *see also APL Co. Pte. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) (same with respect to non-negotiable bills of lading).

    **ii.**   **Breach of Oral Contract**

A second potential source of Plaintiff's breach of contract claim is the promise Exclusive allegedly made to surrender the original bills of lading. *See* Compl. at ¶ 11. In an admiralty case for breach of contract, a plaintiff must plead sufficient facts to establish: (1) the terms of the maritime contract; (2) that the contract was breached; and (3) the reasonable value of purported damages. *Overseas Philadelphia, LLC v. World Council of Credit Unions, Inc.*, 892 F. Supp. 2d 182, 188-89 (D.D.C. 2012) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005)). Here, the terms of any purported oral contract are nowhere provided. Furthermore, the information that is provided is contradictory. The Complaint simultaneously states that Exclusive breached its contract with Dynamic by failing to present the original negotiable bills of lading in order to obtain the goods, while also conceding that it nonetheless authorized the delivery in reliance on a promise by Exclusive that it would obtain and surrender the bills at some unidentified point in time. Compl. at ¶¶ 11, 22-23. It is unclear whether the

15

transfer of cargo was meant to serve as consideration for the bills of lading, or if Exclusive was previously bound to surrender the bills of lading by some unspecified agreement.[16]

Taken as a whole, the Complaint is marred by a lack of necessary detail and ambiguity. Plaintiff fails to clearly identify the source of Exclusive's obligation or the contractual language that defines it.  The papers submitted by Plaintiff are also lacking in contextual information that sheds light on the allegations.  "A sufficient pleading for breach of contract must, 'at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages in a plain and simple fashion.' "  *Warren v. John Wiley & Sons, Inc*., 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (dismissing breach of contract claim for failure to identify any contracts, express or implied contractual terms, contracting parties, or corresponding dates) (quoting *Zaro Licensing, Inc. v. Cinmar, Inc*., 779 F. Supp. 276, 286 (S.D.N.Y. 1991)).  Therefore, Plaintiff's claim for breach of contract is dismissed.

---

[16] While Plaintiff never frames its claim as one for promissory estoppel, there is a question as to whether it would be able to claim its reliance was reasonable—a necessary element to such a claim.  A commercial party in its position generally would have demanded some form of a security or a letter of indemnity before they would agree to release the cargo without obtaining the corresponding bills of lading. *See e.g. Orient Overseas Container Line v. Kids Int'l Corp*., No. 96 Civ. 4699 (DLC), 1998 WL 531840, at *2 (S.D.N.Y. Aug. 24, 1998) (carrier agreed to release cargo only on the condition that the receiver sign letters of indemnity promising to indemnify, defend, and hold it harmless from any and all claims brought against it as a result of its release of the goods without the original bills of lading); *A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd*., No. 86 Civ. 9544 (VLB), 1990 WL 209637, at *1 n.2 (S.D.N.Y. Mar. 30, 1990) (carrier agreed to release cargo in exchange for a letter of indemnity, which was vacated once the original bills of lading appeared).

III.     **Conclusion**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  The Clerk of

the Court is respectfully directed to terminate the motion, Doc. 17, and to close the case.


It is SO ORDERED.

Dated:     January 6, 2015
           New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.

17