UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DYNAMIC WORLDWIDE LOGISTICS,
INC.,

                              Plaintiff,

          – against –

EXCLUSIVE EXPRESSIONS, LLC,
DAVID SAAD and JOSEPH SAAD,

                              Defendants.

**OPINION AND ORDER**

14 Civ. 1370 (ER)

RAMOS, D.J.:

        Dynamic Worldwide Logistics, Inc. ("Dynamic" or "Plaintiff) seeks an amendment of the

Court's January 6, 2015 opinion, in which the Court dismissed Plaintiff's claims against

Exclusive Expressions, LLC ("Exclusive"), David Saad, and Joseph Saad (together with

Dynamic, "Defendants") with prejudice.[1]  *See* Order, Doc. 24.  Dynamic is a New Jersey-based

non-vessel-operating common carrier ("NVOCC") that arranged for the transportation of leather

goods from China to the United States.  Plaintiff authorized the delivery of several shipments to

Exclusive, an importer of Chinese goods, without collecting the corresponding bills of lading.

Plaintiff did so based on its understanding that Defendants would produce them at some later

date.  After making repeated subsequent demands for the bills, Plaintiff brought suit against

Defendants for conversion and breach of contract.  Defendants moved for a judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Doc. 17.  In its

response to Defendants' motion, Plaintiff did not request leave to amend in the event the Court

---

[1] David and Joseph Saad are alleged to be either members or managers of Exclusive who currently reside in New
York.  PAC ¶¶ 3-4.

were inclined to dismiss the Complaint.  *See* Doc. 20.  The Court dismissed Plaintiff's claims, and ordered the clerk to close the case.  *See* Doc. 24.

Plaintiff now moves under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the Court's January 6, 2015 Order, only to the extent that it dismissed Plaintiff's claims with prejudice.   Plaintiff also requests leave to file a proposed Amended Complaint ("PAC"), which purportedly corrects the defects present in the original Complaint.  For the reasons set forth below, Plaintiff's motion under Rule 59(e) is GRANTED and its motion seeking leave to amend is DENIED.

## I.    Factual Background

### A.   The January 6, 2015 Order

Familiarity with the facts of this case, which were discussed extensively in the January 6, 2015 Order, is presumed.  This Court dismissed Plaintiff's case after finding that the Complaint was "marred by a lack of necessary detail and ambiguity."  Doc. 24 at 16.

Plaintiff's conversion claim was dismissed for failure to plausibly allege the elements of conversion.  First, the Complaint did not establish that Plaintiff had a superior possessory interest in the handbags, wallets, and evening bags that Plaintiff delivered to Exclusive.  *Id*. at 8, 12.  Second, the Complaint did not allege that Plaintiff made demands for return of the property or that Defendants wrongfully disposed of it.  *Id*. at 8-9, 12.  Furthermore, the Court noted the absence of any legal authority supporting Plaintiff's proposition that an NVOCC can assert a claim in its own name on behalf of a shipper.  *Id*. 7-8.

The Court also dismissed Plaintiff's breach of contract claim.  The claim was so deficient that the Court was unable to determine even whether it was premised on a breach of the

obligations in eight bills of lading—copies of which were not attached to the Complaint or otherwise provided to the Court—or an alleged oral promise to tender the bills after the goods were delivered.  *Id*. at 12.  As to the bills of lading, which Plaintiff alleged were negotiable, the Court determined that although there is an obligation on the *carrier* to collect the bills, nothing suggested that Exclusive—the *consignee*—was contractually obligated to produce them.  *Id*. at 13-14.  Furthermore, the Complaint did not cite any terms in the bills of lading identifying Exclusive as a party thereto.  *Id*. at 14-15.  The Court also determined that Plaintiff failed to identify the essential terms of any potential oral contract that would have required Exclusive to obtain and surrender the bills of lading.  *Id*. at 16-17.

### B.  The Proposed Amended Complaint ("PAC")

The PAC relies on slightly different facts than the original Complaint.  According to the PAC, on August 13, 2012, Dynamic issued three negotiable bills of lading for the transportation of handbags and wallets from Yantian, China to New York City.  PAC ¶ 9.  These bills all began with the label code SNZ1200313.  *Id*.  The shippers were, respectively, Guangdong Guangxin Trade Development Co., Ltd. ("Guangdong"), Hainjing Changhong Import and Export Co., Ltd., and Sincere Trader Leather Goods Co. Ltd ("Sincere").  *Id*. ¶ 10.  Exclusive was the consignee and Notify Party.  *Id*.  The shipment of these goods arrived at the Port of New York in September 2012.  *Id*. ¶ 19.

On October 20, 2012, Dynamic issued three additional negotiable bills of lading for the transportation of another shipment of handbags from Shanghai, China to New York City.  *Id*. ¶ 13.  These bills all began with the label code SHA1201419.  *Id*. The shippers once again included Guangdong and Sincere, along with Yiwu Saiskai Import & Export Co., Ltd.  *Id*. ¶ 14.

Exclusive was both the consignee and Notify Party.  *Id*. ¶¶ 15-16.  The PAC states that the shipment of these goods did not arrive in the Port of New York until December 2012.  *Id*. ¶ 20.  Yet, it also indicates that, on November 12, 2012, Plaintiff notified David Saad that those same goods moving under Dynamic Bill of Lading SHA1201419, which had not yet arrived in New York, were somehow accruing demurrage because Exclusive had not tendered the corresponding bills of lading.[2]  *Id*. ¶ 22.  According to Plaintiff, "[p]ursuant to well-established custom in the industry, a shipper only releases a bill of lading to its consignee upon receipt of payment for goods being shipped."  *Id*. ¶ 18.   In response, David Saad stated that Exclusive had paid the shipper and that the bill of lading would be released "shortly."[3]  *Id*. ¶ 23.

On December 2, 2012, Plaintiff contacted Exclusive again regarding the accruing demurrage.  *Id*. ¶ 24.  Exclusive responded that its agent in China had the bills of lading "from the factories" and that "it is 100% done."  *Id*. ¶ 25.  Based on these cryptic representations, Plaintiff authorized the release of the goods from both shipments.  *Id*. ¶ 26.  At some unspecified date "shortly thereafter," one of the shippers—which Plaintiff does not identify—informed Plaintiff's China office that Exclusive never paid for the goods.  *Id*. ¶ 27.  Moreover, it demanded that, unless it was paid shortly, it wanted the goods shipped back to China or resold.  *Id*.  At this point, Plaintiff demanded the bills of lading from Exclusive, or the return of the cargo in its possession.  *Id*. ¶ 28.  Exclusive informed Dynamic that it was unsure of why the shipper

---

[2] Demurrage is defined as the "remuneration of the shipowner for the detention of its vessel beyond the number of days allowed by the charter-party."  *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp*., 204 F.3d 384, 386 n.2 (2d Cir. 2000) (citing Black's Law Dictionary 432 (6th ed.1990)).  In other words, demurrage amounts to storage fees.

[3] The PAC does not identify which shipper Exclusive claimed to have paid.

was complaining because it had agreed to pay part of the balance that week, and the remainder the following week.  *Id*. ¶ 29.

The shipper subsequently informed Plaintiff that, if it did not receive payment, it would hold Plaintiff responsible for releasing the goods without obtaining the bills of lading.  *Id*. ¶ 32. Peter Chau, the Vice President of Dynamic, repeatedly visited Exclusive's office to demand the bills of lading or return of the goods.  *Id*. ¶ 34.  He met with David and Joseph Saad, who told him that they would tender the bills of lading—although they did not specify when.  *Id*.  As of the filing of the PAC, Defendants have not produced the bills of lading.  *Id*. ¶ 39.  Plaintiff maintains that it has a superior claim to ownership, as a NVOCC, and that Exclusive has no ownership rights since it has not paid for the goods.  *Id*. ¶ 40.

The PAC once again asserts claims of conversion against all Defendants and breach of contract against Exclusive.  *Id*. ¶¶ 52-59, 66-72.  In addition, it raises a new claim of fraud against Exclusive and David Saad.  *Id* ¶¶ 60-65.

## II.   Legal Standards

### A.   Legal Standard for Rule 59(e) Motions

A motion to alter a judgment pursuant to Rule 59(e) "may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013)).  The Second Circuit has noted that it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal quotation marks and citation omitted).

The standards for relief under Rule 59(e) and motions for reconsideration under Local Civil Rule 6.3 and are "identical." *See Ramirez v. United States*, No. 05 Civ. 4179 (SAS), 2013 WL 247792, at *1 (S.D.N.Y. Jan. 22, 2013) (internal citation and quotation marks omitted). "Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) (quoting *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Both rules are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Solutions N. Am., LLC*, No. 14 Civ. 2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (internal quotation marks and citation omitted) (alteration in original). "Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion or attempts to advance new facts, the motion for reconsideration must be denied." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

Furthermore, whether to grant or deny a motion brought under Rule 59(e) or Local Rule 6.3 is within "the sound discretion of the district court." *In re Gildan Activewear, Inc. Sec. Litig.*, No. 08 Civ. 5048 (HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

**B.  Legal Standard for Leave to Amend[4]**

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires."  Fed. R. Civ. Pro. 15(a)(2).  The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"A party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b*)."  Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal citation omitted).  Moreover, an amendment "is not warranted absent some indication as to what [the plaintiffs] might add to their complaint in order to make it viable."  *Shemian v. Research In Motion Ltd.*, 570 Fed. App'x 32, 37 (2d Cir. 2014) (summary order) (internal citation and quotation marks omitted).  Where a plaintiff has neither requested leave to amend, nor indicated additional facts that would be added to the complaint, a court is not required to grant leave to amend *sua sponte*.  *See Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 Fed. App'x 472, 474 (2d Cir. 2009) ("Given that [the plaintiff] did not move for leave to replead in opposition to [the defendant's] motion to dismiss his original complaint with prejudice, the district court did not abuse its discretion by failing to grant him, *sua sponte*, leave to replead."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (finding that the district court "was under no obligation to provide [the

---

[4] Although Plaintiff has not explicitly moved for leave to amend the Complaint under Rule 15(a) of the Federal Rules of Civil Procedure, its motion is clearly intended to permit Plaintiff to amend the deficiencies that the Court identified in its January 6, 2015 Order.

plaintiffs] with leave to amend their complaint, much less provide such leave *sua sponte*" where they neither requested leave to amend, nor indicated additional facts that might lead to a different result).   Nevertheless, "where the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant." *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc*., 26 F. Supp. 2d 593, 605 (S.D.N.Y. 1998) (citing *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir. 1991)).

## III.    Discussion

### A.  Motion for Reconsideration

#### i.    *Timeliness*

In a footnote, Defendants note that Plaintiff did not timely move for reconsideration under Local Rule 6.3.  Doc. 29 at 2 n.1.  Plaintiff filed the instant motion on January 26, 2015, twenty days after the Court dismissed Plaintiff's action for failure to state a claim.  *See* Docs. 24, 26.  Indeed, Local Rule 6.3 requires that a notice of motion for reconsideration be served within fourteen days after the entry of a court's determination of the original motion.  However, Plaintiff's motion is premised on Rule 59(e) of the Federal Rules of Civil Procedure, which requires a motion to alter or amend a judgment to be filed within twenty-eight days of the entry of judgment.  *See* Fed. R. Civ. P. 59(e).  Even if Plaintiff had brought its motion under *both* Rule 59(e) and Local Rule 6.3, the fourteen-day limitation applicable to Local Rule 6.3 applies "[u]nless otherwise provided by the Court or by statute or rule."   Thus, most courts have found that Local Rule 6.4 does not supplant the time limit applicable to motions brought under Rule 59(e).  *See Smith v. City of New York*, No. 12 Civ. 8131 (JGK), 2014 WL 2575778, at *1 (S.D.N.Y. June 9, 2014) ("The fourteen-day time limit applicable to motions under Local Rule 6.3 does not, for present purposes, trump the time limits applicable under Rules 59(e) and 60(b)

8

for motions directed to modifying a Judgment."); *Simpson v. City of New York*, No. 12 Civ. 6577 (KBF), 2014 WL 595759, at *1 (S.D.N.Y. Feb. 10, 2014) ("[I]t would appear that the 28-day limitation in Federal Rule 59(e) supersedes the 14-day limitation in Local Rule 6.3."). Therefore, Plaintiff's motion was timely.

> ii.     *Dismissal With Prejudice*

Plaintiff's motion asks the Court to reconsider whether dismissal with prejudice is warranted so that Plaintiff may amend its Complaint to address the deficiencies identified by the Court and plead an additional claim.  On more than one occasion, the Second Circuit has stated that, "[w]hen the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly."[5]  *Ruotolo*, 514 F.3d at 192 (quoting *State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)).  Although Rule 15 "plainly embodies a liberal amendment policy" and courts usually grant leave to amend after granting a motion to dismiss, courts must also consider "the competing interest of protecting the finality of judgments and the expeditious termination of litigation."  *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (internal citation and quotation marks omitted).  And while, "[a]s a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) *and the plaintiff*

---

[5] The Court notes that most of the cases Plaintiff cited in support of reconsideration involved *pro se* plaintiffs, who are generally afforded more leniency.  *See Blakely v. Wells*, 209 F. App'x 18, 20 (2d Cir. 2006); *Branum v. Clark*, 927 F.2d 698, 704 (2d Cir. 1991); *Salahuddin v. Cuomo*, 861 F.2d 40, 43 (2d Cir. 1988).

Plaintiff also cites *Foman*, 371 U.S. at 182, in which the Supreme Court found that the district court abused its discretion in refusing to permit the plaintiff to amend her claims post-judgment.  However, the Court noted that "there was nothing in the record to show the circumstances which were before the District Court for consideration in ruling on those motions [to vacate and amend]."  *Id.* at 181.  Therefore, although "the grant or denial of an opportunity to amend is within the discretion of the District Court," the "outright refusal to grant the leave *without any justifying reason* appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Id.* at 182 (emphasis added).

*requests permission to file an amended complaint*, that request should ordinarily be granted[,]" Plaintiff made no such request at the time the Court dismissed its case. *See Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir. 1991) (internal citations omitted) (emphasis added).

Plaintiff relies solely on the liberal legal standard for leave to amend without acknowledging the strict legal standard that applies to Rule 59(e) motions. In fact, Plaintiff does not point to any cases that the Court overlooked; nor does it cite a change in controlling law, new evidence, the need to correct a clear error, or prevent manifest injustice. *See Fireman's Fund*, 10 F. Supp. 3d at 475. Plaintiff's seven-page memorandum merely summarizes the Court's January 6, 2015 Order, recites case law stating that leave to amend should be granted freely, and states that leave to amend should be granted because Plaintiff's motion is neither futile, prejudicial, nor in bad faith. At most, Plaintiff argues—in a footnote—that, given that motions to amend should ordinarily be granted, it would constitute clear error or a manifest injustice for the Court to deny Plaintiff leave to amend. Doc. 26 at 4 n.5.

While Second Circuit case law affords district courts the authority to freely grant leave to amend, *see Ricciuti*, 941 F.2d at 123 ("Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires' . . . and it is rare that such leave should be denied . . . especially when there has been no prior amendment.") (internal citations omitted); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground.") (internal citation omitted), it also affords discretion to deny such leave when a plaintiff does not specifically request leave to amend, or merely did so informally. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("While leave to amend . . . is 'freely granted' . . . no court can

10

be said to have erred in failing to grant a request that was not made."); *Malin v. XL Capital, Ltd*., 312 F. App'x 400, 402-403 (2d Cir. 2009) (finding no legal error where the district court instructed the clerk to close the case, noting that it did not deny a motion for leave to amend because plaintiffs never made one); *Mandarino v. Mandarino*, 180 F. App'x 258, 260-61 (2d Cir. 2006) ("We find no abuse of discretion in the District Court's dismissal with prejudice of plaintiff's claim[s] . . . because plaintiff never sought leave to amend his complaint before the District Court."); *Anatian v. Coutts Bank Ltd*., 193 F.3d 85, 89 (2d Cir. 1999) ("While we recognize that leave to amend should be freely granted, especially in the case of a Rule 9(b) dismissal . . . we will not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought.") (internal citation and quotation marks omitted).

Although the foregoing authority grants the Court ample discretion to deny Plaintiff's motion for reconsideration on these facts, a very recent Second Circuit case, issued after the parties submitted their briefing, bears on the Court's analysis.  In *Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 13 Civ. 1476, 2015 WL 4492258, at *24 (2d Cir. July 24, 2015), the Second Circuit determined that the district court exceeded the bounds of its discretion in denying the plaintiffs' request for leave to amend their complaint.  The issue of amendment was first raised at a pre-motion conference by the court.  *Id*. at *6.  The plaintiffs declined the court's invitation to amend, even though the court advised them that they may not have the ability to seek leave to amend later.  *Id*.  After the defendants filed their motion to dismiss under Rule 12(b)(6), the plaintiffs requested leave to amend in their opposition.  *Id*.  At oral argument, the court rejected the plaintiffs' counsel's attempts to revisit the issue, stating that "the time to respond was then."  *Id*.  The court proceeded to dismiss the plaintiffs' claims with prejudice.  *Id*.

11

at *7.  The Second Circuit acknowledged that "denial of leave might be proper where a plaintiff's request was inconspicuous and never brought to the court's attention."  *Id*. at *25 (citing *In re Tamoxifen Citrate Antitrust Litig*., 466 F.3d 187, 220 (2d Cir. 2006) *abrogated on separate grounds by F.T.C. v. Actavis, Inc*., 133 S. Ct. 2223 (2013)).  Nonetheless, it specified that, even in those cases, its analysis is "directed at other underlying issues like notice and futility."  *Id*.  Therefore, since the district court's denial of leave was solely based on the informality of the request, it was improper.  *Id*.

The facts involved in the instant case are certainly distinguishable from *Loreley*.  Most significantly, Plaintiff provided no indication that it wished to amend its Complaint until after the Court issued its January 6, 2015 Order.  Plaintiff could have sought to amend its Complaint with leave of the Court or consent of Defendants on multiple occasions.  For example, Defendants submitted a letter to this Court to request a pre-motion conference in anticipation of filing a motion to dismiss in which they summarized their views on the deficiencies in the Complaint.[6] *See* Doc. 11.  In its written response, Plaintiff contested Defendants' arguments and asked the Court to deny leave to file a motion to dismiss.  Doc. 13.  At the pre-motion conference, held on June 9, 2014, the very purpose of which was to determine whether such a motion was colorable, Plaintiff again passed on the opportunity to request leave to amend.  *See* Hr'g Tr., May 9, 2014.

---

[6] The undersigned, like several other judges of the Southern District of New York, requires litigants to submit to a pre-motion conference prior to filing motions in order to explore the possibility of obviating the motion through consent of the parties, limiting the scope of the issues to be decided, or advising the proponent of the Court's preliminary view that such a motion would be futile.  *See* Individual Practices of Judge Edgardo Ramos at ¶ 2(A) (revised April 24, 2015).  In the context of proposed motions to dismiss, it is frequently the case that at the conclusion of such pre-motion conferences, plaintiffs request—and are granted—the opportunity to amend the complaint to address the deficiencies identified by the opposing party.

In its opposition papers, Plaintiff once more rested on the Complaint, giving no indication that it sought the opportunity to replead.   *See* Doc. 20.

Furthermore, the Second Circuit described the pleading defects identified by the district court in *Loreley* as "borderline" and requiring determinations that "entail judgement calls on which reasonable minds can differ."   *Id.* at *26.   In contrast, this Court determined that Plaintiff's claims were totally "marred by a lack of necessary detail and ambiguity" and that its papers were "lacking in contextual information that sheds light on the allegations."   *See* Doc. 24 at 13.   Now, in its motion to amend the judgment, Plaintiff does not cite to any new case law or decisions overlooked by the Court.   Although the PAC states several facts that were not contained in the original Complaint, Plaintiff does not claim that these facts constitute new evidence that it was not previously aware of.

Nonetheless, this Court is particularly mindful of the Second Circuit's observation that, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 2015 WL 4492258, at *25.   Furthermore, although much of the original Complaint was indecipherable, the Court acknowledges that the January 6, 2015 Order did not state that Plaintiff's pleadings were entirely incurable.   These two factors, together with the permissive standard of Rule 15, weigh in favor of allowing Plaintiff to seek leave to amend its Complaint. Although Plaintiff's papers do not meet the "heavy burden" of Rule 59(e), the Court will, in its discretion, consider Plaintiff's request to amend its pleadings as set forth in the PAC. Accordingly, Plaintiff's motion to amend the January 6, 2015 Order so as to dismiss the case without prejudice is granted.

13

**B. Leave to Amend**

The PAC alleges three claims, conversion and breach of contract, as alleged in the original Complaint, and fraud.  Despite the detailed critique of the original two claims in the January 6, 2015 Order, the PAC completely fails to cure the deficiencies.

*i.     Conversion Claim*

Conversion is defined under New York law as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."[7]  *Thypin Steel Co. v. Certain Bills of Lading Issued for Cargo of 3017 Metric Tons, More or Less, of Hot Rolled Steel Plate Laden on Bd. M/V Geroi Panfilovsky*, No. 96 Civ. 2166 (RPP), 1998 WL 912100, at *5 (S.D.N.Y. Dec. 30, 1998) *aff'd in part, dismissed in part sub nom. Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273 (2d Cir. 2000) (citing *G.D. Searle & Co. v. Medicore Commc'ns, Inc.*, 843 F. Supp. 895, 912 (S.D.N.Y. 1994)).  To state a claim for conversion, a plaintiff must demonstrate that it has "legal ownership or an immediate possessory right superior to that of defendants'" and that "the defendants exercised unauthorized dominion over the property to the exclusion" of the plaintiff's rights.  *Sea-Land Serv., Inc. v. Remington Rand Corp.*, No. 84 Civ. 177 (LBS), 1986 WL 8862, at *5 (S.D.N.Y. Aug. 7, 1986) *aff'd sub nom. Sealand Serv. Inc. v. Remington Rand Corp.*, 812 F.2d 713 (2d Cir. 1987) (citing *Gold Medal Products, Inc. v. Interstate Computer Servs., Inc.*, 80 A.D.2d 601, 600, 436 N.Y.S.2d 312, 313 (App. Div. 1981)).

---

[7] In the January 6, 2015 Order, the Court found that New York substantive law governed Plaintiff's conversion claim because the place of injury was New York—the state to which the items were delivered and where all Defendants allegedly reside.  Doc. 24 at 6 n.6.  Neither of the parties dispute this determination.

This Court dismissed Plaintiff's conversion claim because the Complaint did not establish that Plaintiff had a superior right of possession to the goods at issue. Doc. 24 at 8-9. Plaintiff claims to have cured this defect. Doc. 26 at 7. However, Plaintiff merely states—in both its moving papers and the PAC—that, since it was an NVOCC transporting cargo on behalf of the shippers, it has a superior possessory interest in those goods. *See id.*; *see also* PAC ¶ 40. Furthermore, because Exclusive failed to pay for them, it does not have any right to the goods. *See id.*; *see also* PAC ¶ 40. As a preliminary matter, the PAC only alleges that *one* of the shippers complained about not being paid by Exclusive. *Id.* ¶ 27, 30, 32. Moreover, the fact remains that Plaintiff voluntarily authorized the release of the goods to Exclusive without collecting the bills of lading or demanding any other form of security. *See id.* ¶ 26; *compare Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 92 (1st Cir. 1993) (carrier accepted indemnity and guarantee agreements in lieu of the bills of lading themselves); *Orient Overseas Container Line v. Kids Int'l Corp.*, No. 96 Civ. 4699 (DLC), 1998 WL 531840, at *2 (S.D.N.Y. Aug. 24, 1998) (carrier agreed to release cargo only on the condition that the receiver sign letters of indemnity promising to indemnify, defend, and hold it harmless from any and all claims brought against it as a result of its release of the goods without the original bills of lading); *A/S Dampskibsselskabet Torm v. Beaumont Oil Ltd.*, No. 86 Civ. 9544 (VLB), 1990 WL 209637, at *1 n.2 (S.D.N.Y. Mar. 30, 1990) (carrier agreed to release cargo in exchange for a letter of indemnity, which was vacated once the original bills of lading appeared).

In other words, Plaintiff is seeking to recover despite its decision to release the cargo to Exclusive without collecting the bills of lading or other form of security, as it was required to do. *See id.* ¶ 21. A bailor may bring a conversion claim against a bailee for "innocent mistakes in the delivery of goods to persons not entitled to receive them." *Fireman's Fund Ins. Co. v.*

15

*Wagner Fur*, Inc., 760 F. Supp. 1101, 1105 (S.D.N.Y. 1991) (internal citation and quotation marks omitted).  Thus, if Plaintiff was a bailee, as it claims to have been, the shippers, as bailors, could sustain an action for conversion against Plaintiff.[8]  Doc. 26 at 3 n.4.  Yet, Plaintiff once again fails to provide the Court with an explanation as to how it maintains any possessory interest in the goods after having authorized their release in direct contravention of the terms of its bailment.  In fact, one treatise suggests that the bailment relationship itself is terminated "by any act of the bailee which is inconsistent with the bailment or which tends to defeat the bailor's right to the property."  8 C.J.S. Bailments § 118.  Furthermore, although there are numerous cases recognizing a *common carrier's* potential *liability* as a bailee for misdelivery, the Court once again notes the absence of any binding case law determining if or when an NVOCC may assert a claim *on the shipper's behalf* as a bailee—particularly for consequences resulting from its own misdelivery.  *See* Doc. 24 at 7.  Thus, Plaintiff has not alleged any additional facts that make its conversion claim more viable.[9]

####    ii.    *Breach of Contract*

The Court dismissed Plaintiff's breach of contract claim after concluding that, whether it was premised on the terms contained in the bills of lading or an oral promise, Plaintiff failed to

---

[8] Although Plaintiff fails to state a cause of action, the *shippers* may have a conversion claim against Exclusive if Defendants disposed of the goods at issue.  As a general matter, "courts have found transfers to be wrongful where the transferor knew the transfer would violate the superior property rights of another, yet disposed of the property anyway, usually for personal gain."  *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 415 (S.D.N.Y. 2007) *aff'd*, 268 F. App'x 17 (2d Cir. 2008).

[9] The Court also notes that, "[u]nder New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in . . . conversion, and other torts . . . are generally precluded, unless based on a duty independent of the contract."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (listing cases).  Thus, even if Plaintiff's conversion and breach of contract claims were properly plead, its conversion cause of action would necessarily fail for being duplicative of the contract claim.

state a claim.  First, the Court found that Plaintiff failed to establish that Exclusive, as the consignee, was contractually obligated by the bills of lading to produce them.  *See* Doc. 24 at 14-15.  When a bill of lading is negotiable, as Plaintiff claims is the case here, a *carrier* may only deliver goods when presented with the original bill.  *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 (MHD), 2012 WL 4767180, at \*6 (S.D.N.Y. Sept. 28, 2012) (internal citation omitted).  However, the January 6, 2015 Order observed that nothing in the case law suggests that *consignees* are inherently required to produce the bills of lading.  Doc. 24 at 14.

Plaintiff reasons that because there is a "well-established custom" of a *shipper* releasing the bill of lading to its *consignee* upon receipt of payment, then Exclusive—the consignee—was therefore required to tender the bills to Plaintiff—the carrier—before the cargo was released.  *See* Doc. 30 at 9.  However, Plaintiff has not identified a specific term in the bills of lading obligating Exclusive to produce them.  Nor was the Court able to identify such a provision in the single bill of lading which Plaintiff attached to the PAC.[10]  *See* PAC, Ex. A.

Second, the January 6, 2015 Order found that Plaintiff also failed to allege the existence of an oral contract between the parties.  *See* Doc. 24 at 15-16.  "[R]ules of contract formation and interpretation shall govern whether obligations imposed by bills of lading or supplemental contracts are valid and enforceable."[11]  *In re M/V Rickmers Genoa Litig.*, 643 F. Supp. 2d 553,

---

[10] In fact, the attached bill of lading raises even more questions about Plaintiff's contract claims.  Not only does the PAC fail to identify which of the six bills of lading is attached, the text of the bill itself states that "[a]ll disputes arising from the shipment to which this bill of lading pertains may only be instituted in the US District Court for the District of New Jersey, which shall have exclusive jurisdiction over such disputes."  PAC, Ex. A.  The bill of lading also states that the contract is governed by New Jersey law, which neither of the parties have cited.  *Id.*

[11] The Court therefore looks to general principles of contract formation without deciding whether New York or federal maritime law applies.  Regardless, since the inquiry implicates the most basic tenets of contract law, the

561 (S.D.N.Y. 2009).  Generally, "the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."  Restatement (Second) of Contracts § 17 (1981).  A "bargain" is defined as "an agreement to exchange promises or to exchange a promise for a performance or to exchange performances."  *Id*. § 3.

The PAC states that Plaintiff released the cargo based on David Saad's representation that it had paid for the goods and obtained the bills of lading, "which . . . would be tendered to Dynamic."  PAC ¶ 26.  Yet, the Court is unable to discern any express agreement between Plaintiff and Defendants to release the cargo in exchange for the bills of lading from Exclusive.  On December 3, 2012, Exclusive informed Plaintiff that, John, its "agent that shipped the container," had both received and released the "supplier's" bills of lading, stating "it is 100% done."  *See id*. ¶ 25, *see also id*. at Ex. C.  Thereafter, Plaintiff authorized the release of the cargo.  *Id*. ¶ 26.  After an unidentified shipper informed Plaintiff that it had not received payment, Plaintiff demanded Exclusive produce the bills of lading.  *Id*. ¶¶ 28, 30, 34, 35.  The two parties corresponded back and forth for at least a month until David and Joseph Saad ultimately informed Plaintiff's vice-president that Exclusive would tender the bills of lading.[12] *See id*. ¶ 34.  Based on these facts, the PAC does not allege the existence of a bargained-for

---

Court has not encountered any discernable conflict between the two bodies of law.  *See Muller Boat Works, Inc. v. Unnamed 52%2C House Barge*, 464 F. Supp. 2d 127, 139 (E.D.N.Y. 2006) ("To form a binding contract [under maritime law], the parties must have agreed on all material terms of a contract and clearly express their intention to be bound by those terms.") (internal citation and quotation marks omitted); *Oparah v. The New York City Dep't of Educ*., No. 12 Civ. 8347 (JGK) (SN), 2015 WL 4240733, at *9 (S.D.N.Y. July 10, 2015) ("To show that a contract was validly executed under New York law, a party seeking enforcement must show that there was an offer, acceptance, consideration, mutual assent, and the  intent to be bound by the contract.") (internal citation omitted).

[12] The PAC does not specify when Defendants made this representation; however, it occurred sometime after the shipper contacted Plaintiff to demand that the goods be returned on January 4, 2013.  PAC ¶ 33.

exchange.  The PAC does not establish an explicit promise by Defendants to tender the bills of lading in exchange for Plaintiff's release of the goods.

Even if the Court were to infer that Defendants made such a promise, the PAC does not clearly establish which bills of lading Defendant promised and failed to produce.  Absent from the PAC is any indication as to which of the bills of lading Exclusive claimed to have in its possession and whether they are the same ones that form the basis for the alleged breach.  Of the four shippers, the PAC also does not state which was demanding payment and threatening to hold Plaintiff responsible for the value of the cargo.[13]  To the extent that Plaintiff claims that all of the bills of lading are at issue, as is suggested by its claim for damages, the PAC does not explain why Exclusive's failure to pay one of the shippers implicates all six bills of lading.  Finally, it is unclear who "John" is, what his relationship is with Exclusive, which supplier he purportedly obtained the bills of lading from, and who he released them to.  In short, Plaintiff has not alleged any additional facts that establish a breach of either an oral or written contract between the parties.

### iii.    Fraud Claim

Plaintiff's fraud claim is based on the allegation that David Saad and Exclusive misrepresented that Exclusive had paid for the goods and obtained the bills of lading in order to induce Plaintiff to release the cargo.  PAC ¶¶ 61-62.  This claim fails to meet the heightened

---

[13] At the initial conference held in connection with this matter, counsel for Defendants stated that the payment dispute was with a shipper called "Whole Truth International, Ltd."  Hr'g Tr., May 9, 2014, 5:4-9.  Notably, this entity is not among the four shippers named in the PAC.

Meanwhile, the papers attached to the PAC include an email from a Dynamic employee to David Saad stating "SINCERE TRADER LEATHER" asked about the status of the shipment and was demanding payment.  *See* PAC, Ex. D (emphasis in original).  However, the PAC does not allege that Defendants made any specific promises with respect to the bills of lading corresponding to Sincere's two shipments.

pleading standard imposed by Federal Rule of Civil Procedure 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Under New York law, the elements of a claim for fraudulent inducement are:  (1) defendant knowingly made a misrepresentation of a material fact; (2) with the intent to deceive another party and induce that party to act on it; (3) plaintiff reasonably relied upon the representation; and (4) as a result of such reliance plaintiff suffered damage.[14]  *Universal Antiques, Inc. v. Vareika*, 826 F. Supp. 2d 595, 607 (S.D.N.Y. 2011) (citations omitted); *see also Gosmile, Inc. v. Levine*, 81 A.D.3d 77, 81, 915 N.Y.S.2d 521 (2010).

Here, Plaintiff has not stated with particularity how David Saad and Exclusive's representations were fraudulent.  The PAC only identifies two relevant statements by Defendants:  (1) David Saad informed Plaintiff that "payment to the shipper had already been made;" (2) Exclusive told Plaintiff that its agent in China had the bills of lading pertaining to one container and "it is 100% done."  *Id.* ¶¶ 23, 25; *see also id.* Exs. B-C.  Yet, as previously noted,

---

[14] As alleged in the PAC, all of the interactions between Plaintiff and Defendants took place on land.  Therefore, since the relevant conduct did not occur on navigable waters, the Court may not exercise admiralty jurisdiction over Plaintiff's fraud claim.  *See Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir. 1971) (no admiralty jurisdiction for tort claims where purported negligence took place on land).  Nonetheless, the PAC establishes that the Court also has diversity jurisdiction over the matter, pursuant to 28 U.S.C. § 1332.  *See* PAC ¶¶ 1-5.

neither of these statements specify which of the four shippers Defendants claimed to have paid or which bills of lading Exclusive had in its possession.  Nor does Plaintiff clarify whether the same shipper later complained about not being paid.[15]  Without this level of detail, Plaintiff's fraud claim simply does not pass muster.

Previously, in its opposition to Defendants' motion to dismiss, Plaintiff stated that "discovery will establish that the individual Defendants have a history of misappropriating goods and then liquidating the company that contracted to transport the cargo."  Doc. 20 at 7 n.2. While Plaintiff's allegations are certainly troubling, both of its complaints have failed to translate its grievances into viable causes of action.  Accordingly, Plaintiff's motion for leave to amend must be denied.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's application under Rule 59(e) is GRANTED. However, Plaintiff's motion for leave to amend is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 26.  The case shall remain closed.


It is SO ORDERED.

Dated:      September 14, 2015
            New York, New York


                                                  Edgardo Ramos, U.S.D.J.

---

[15] The PAC does allege that, after Plaintiff released the goods, Exclusive stated that it was unsure why the shipper was complaining about not being paid because it had agreed to pay the shipper partially that week, and pay the balance the following week.  PAC ¶ 29.  However, Plaintiff could not have relied on this statement since it was made after it released the cargo.

21